IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

STEPHEN HORRILLO, as Personal )
Representative of the Estate of )
MARGARET HORRILLO, on behalf of )
The Estate of MARGARET HORRILLO and )
on behalf of himself as her surviving son, )
  )
     Plaintiff, )
  )
v. )     CASE NO.
  )     08-60931-CIV-MATTHEWMAN
COOK INCORPORATED d/b/a/ COOK )
MEDICAL®, )
  )
     Defendant. )
_____ )

## PLAINTIFFS' REPLY AND MOTION TO STRIKE
## DEFENDANT'S AFFIRMATIVE DEFENSES

COMES NOW the Plaintiff, STEPHEN HORRILLO, as Personal Representative of the Estate of MARGARET HORRILLO, on behalf of The Estate of MARGARET HORRILLO and on behalf of himself as her surviving son, by and through the undersigned attorneys, and pursuant to Fed. R. Civ. P. 8 and 12(f), hereby files this Reply and Motion to Strike the Defendant's Affirmative Defenses, and as grounds in support thereof would show unto the Court the following:

### REPLY TO AFFIRMATIVE DEFENSES

1.     All affirmative defenses raised in the answer of the defendant are denied.

2.     All affirmative defenses raised in the answer of the defendant not specifically admitted are hereby specifically denied.

3.     The first affirmative defense of "assumption of the risk" is denied since it fails to state a lawful defense available to the defendant under the circumstances of this case.  The

defense of "assumption of the risk" is no longer recognized under Florida tort law in cases other than contact sports.  The plaintiff's decedent was not engaged in any such activity and therefore the defense of "assumption of the risk" is not available to the defendant as a defense in this case.

Furthermore the affirmative defense of informed consent is not available to the defendant since the plaintiff's decedent was never advised that a biliary stent manufactured by the defendant was going to be implanted into her renal artery as an experiment and off label use of the device and therefore no informed consent was ever given by the plaintiff's decedent.

Furthermore the defendant concealed the fact that the implantation of its biliary stent into the renal artery of a patient would increase the risk of suffering a stroke and therefore the plaintiff's decedent never gave her informed consent to the use of the defendant's biliary stent off label in her renal artery. See also plaintiff's motion to strike the affirmative defense stated separately in this pleading.

2.      The second affirmative defense is denied. The physician who implanted the defendant's biliary stent into the renal artery of the plaintiff's decedent was not a learned intermediary since he was not given the correct and complete information available to the defendant about the increased risk of stroke when the defendant's biliary stent was used off label to be implanted into the renal artery of a patient.  In fact, the defendant concealed the fact that the implantation of their biliary stent into the renal artery of a patient would increase the risk of stroke thereby depriving the physician of that knowledge.  See also plaintiff's motion to strike the affirmative defense stated separately in this pleading.

3.      The third affirmative defense is denied.  The biliary stent manufactured by the defendant that was FDA approved as a Class II medical device through the 510 K process which did not require clinical trials and was thereafter promoted by the defendant for use off label as a

Class III medical device in violation of the FDA rules and regulations and therefore the defendant is not entitled to claim a preemption under federal law.  See also plaintiff's motion to strike the affirmative defense stated separately in this pleading.

4.      The fourth affirmative defense is denied.  The defense fails to comply with the *Fabre* pleading requirements and therefore fails to state a lawful affirmative defense as is argued in the plaintiff's motion to strike the affirmative defense stated separately in this pleading. In addition the physician, Michael Rush, M.D., was not given complete or accurate information about the risks of stroke associated with implanting the defendant's biliary stent into the renal artery of the plaintiff's decedent even though the information was in the possession of the defendant.  In fact the defendant concealed the information about the increased risk of stroke from Michael Rush, M.D. and other physicians who were being encouraged to use the biliary stent off label in the renal arteries of patients.

5.      The fifth affirmative defense is denied.  The defense fails to comply with the *Fabre* pleading requirements and therefore fails to state a lawful affirmative defense as is argued in the plaintiff's motion to strike the affirmative defense stated separately in this pleading. In addition the physician, Michael Rush, M.D., was not given complete or accurate information about the risks of stroke associated with implanting the defendant's biliary stent into the renal artery of the plaintiff's decedent even though the information was in the possession of the defendant.  In fact the defendant concealed the information about the increased risk of stroke from Holy Cross Hospital and other facilities that were being encouraged to use the biliary stent off label in the renal arteries of patients.

6.      The sixth affirmative defense is denied.  The defense fails to comply with the *Fabre* pleading requirements and therefore fails to state a lawful affirmative defense as is argued in the plaintiff's motion to strike the affirmative defense stated separately in this pleading.

7.      The seventh affirmative defense is denied.  The defense is not available to the biliary stent was FDA approved as a Class II medical device for use in the biliary tract only and was not approved for use in the renal arteries of patients as a Class III medical device.  The defendant was marketing its biliary stent for off label use in the renal arteries of patients in violation of the FDA rules and regulations and therefore the state of the art defense is not available to it in this case.  See also plaintiff's motion to strike the affirmative defense stated separately in this pleading.

8.      The eighth affirmative defense is denied.

9.      The ninth affirmative defense is denied.

10.     The tenth affirmative defense is denied.  See also plaintiff's motion to strike the affirmative defense stated separately in this pleading.

11.     The eleventh affirmative defense is denied.  See also plaintiff's motion to strike the affirmative defense stated separately in this pleading.

12.     The twelfth affirmative defense is denied since it does not state any affirmative defense.

## MOTION TO STRIKE

### I. INTRODUCTION

On December 9, 2013, Defendant filed its Answer to Amended Complaint. [D.E. 180]. However, Defendant fails to properly plead several affirmative defenses in accordance with

Federal Rules of Civil Procedure and governing case law. Specifically, Plaintiff moves to strike the following Affirmative Defenses:

- First Affirmative Defense: Plaintiff's decedent assumed the risk associated with the use of any Cook product in connection with medical treatment by providing her informed consent prior to undergoing the medical treatment.

- Third Affirmative Defense: Plaintiff's claims are preempted by the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act, Regulations of the United States Food and Drug Administration and other federal law in accordance with the supremacy clause of the United States Constitution.

- Fourth Affirmative Defense: If and to the extent that Dr. Michael Rush, in the exercise of his own independent medical judgment, used a Balloon Expandable Biliary Stent to stent Margaret Horrillo's right renal artery, any such off-label use by him of that device in the vascular system may render Dr. Rush liable for all or part of Plaintiff's claims against Cook if such use of the device by Dr. Rush constitutes a deviation from the applicable standard of care or otherwise constitutes fault on the part of Dr. Rush. Any such fault diminishes proportionally any amount awarded as compensatory damages.

- Fifth Affirmative Defense: If and to the extent that Holy Cross Hospital ("Holy Cross") authorized the use by Dr. Michael Rush of a Balloon Expandable Biliary Stent to stent Margaret Horrillo's right renal artery, any authorization or direction by Holy Cross of such off-label use of that device by him in the vascular system may render Holy Cross liable for all or part of Plaintiff's claims against Cook if such use of the device by Dr. Rush constitutes a deviation from the applicable standard of care or otherwise constitutes fault on the part of Dr. Rush, and Holy Cross authorized or directed any such use of the device by Dr. Rush. Any such fault diminishes proportionally any amount awarded as compensatory damages.

- Sixth Affirmative Defense: Cook reserves the right to assert that Plaintiff's damages, if any, are the result of the acts or omissions of other persons or entities, which will be identified to the Plaintiff within a reasonable time after learning of their identities and the basis for such a claim. Any such fault diminishes proportionally any amount awarded as compensatory damages.

- Seventh Affirmative Defense: Any Cook product conformed to the recognized state of the art applicable to the safety of the product at the time it was designed, manufactured, and distributed.

- Tenth Affirmative Defense: Any award of punitive damages in this case would be impermissible under the standards established by the United States Supreme Court in the case of *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).

- <u>Eleventh Affirmative Defense</u>: Any award of punitive damages would violate the due process requirements of the Fourteenth and Fifth Amendments of the Constitution of the United States of America and the Constitution of the State of Florida.

## II. STANDARD

Under Fed. R. Civ. P. 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fine's Gallery, LLC v. From Europe to You, Inc.*, 2011 WL 5583334 *1 (M.D. Fla. 2011).

An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence. *Wright v. Southland Corp.*, 187 F.3d 1287, 1302 (11th Cir. 1999). Affirmative defenses are subject to the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(b)(1)(A) requires that a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). As with any pleading, an affirmative defense must give the plaintiff "fair notice" of the nature of the defense and the grounds upon which it rests, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007), and state a plausible defense. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

In a case premised on diversity jurisdiction, the legal and factual sufficiency of the affirmative defenses is examined with reference to state law. *Reiss Robotics*, 462 F. Supp. 2d at 905, *citing Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir.1991). Here, Plaintiff suffered injury in Florida and this action is before this Court pursuant to diversity jurisdiction. Accordingly, the Court should apply the law of Florida where appropriate.

## III. ARGUMENT

The following arguments support striking, or in the least a more definite statement, as to the following defenses:

6

## First Affirmative Defense

The defense of "assumption of the risk" is no longer recognized as a separate defense under Florida law since it has been merged into the defense of comparative negligence in all cases except for contact sports and other high risk activities where the plaintiff signs a written waiver. *Blackburn v. Dorta*, 348 So.2d 287 (Fla. 1977); *Standard Havens Products, Inc. v. Benitez*, 648 So.2d 1192 (Fla. 1994); *Kendrick vs. Ed's Beach Service, Inc.*, 577 So.2d 936 (Fla. 1991); FSA §768.81.

The defendant seems to suggest that Margaret Horrillo expressly assumed the risk by signing the patient consent form. However, stroke was not listed as one of the possible complications in the patient consent form. For express assumption of risk to be a valid defense, "it must be clear that the plaintiff understood that she was assuming the particular conduct by the defendants which caused her injury. No agreement to assume unknown risks shall be inferred." *Van Tuyn v. Zurich American Insurance Co.*, 447 So.2d 318, 320-21(Fla. 4th DCA 1984).  The use or possible use of the stent was never articulated to her, and the fact that it was being used off-label, for an unapproved use in the renal vasculature was also unknown to her.

Given the applicable Florida law and the Defendant's failure to provide any factual context or to specify what, if any, language in the medical consent form signed by Margaret Horrillo constitutes an express assumption of risk, the Defendant's First Affirmative Defense should be stricken.

## Third Affirmative Defense[1]

The Cook stent at issue in this case was only approved by the FDA's §510(k) process for implantation in the biliary ducts as a class II medical device; and was not approved as a class III

---

[1] Please see Plaintiff's previously filed Motion in Limine regarding Federal Pre-emption [D.E. 55] for additional discussion. Plaintiff incorporates by reference all arguments made therein.

device for renal artery implantation. The device still has not been approved by the FDA as a class III medical device for renal artery implantation.

Federal preemption under the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act §360k(a) does not apply to class II devices approved through the less rigorous §510(k) approval process as a matter of law.

In the case at bar, defendant Cook sought approval of the Formula 418 Balloon expandable biliary stent, under the §510(k) process, 21 U.S.C §360(k), and received initial approval on August 25, 2005.  The seminal case on point, *Medtronic Inc. v. Lohr*, 518 U.S 470, 471(1996), holds: (1) state law defective design claims are not preempted despite federal approval based on substantial equivalency under the §510(k) process and (2) the MDA does not preempt state or local requirements that are equal to, or substantially identical to, requirements imposed under federal law.

Moreover, claims are not preempted to the extent that they alleged the manufacturer negligently failed to comply with duties equal to, or substantially identical to, federal requirements; and (3) claims based on allegedly defective marketing and labeling are not preempted. *Medtronic Inc. v. Lohr*, 518 U.S 470, 471(1996).  "[G]iven the critical importance of device specificity in our (and the FDA's) construction of  §360k, it is apparent that few, if any, common-law duties have been pre-empted by this statute." *Id.* at 503.

The court in *Medtronic* declined to apply federal preemption for two reasons: (1) Because states are "independent sovereigns in our federal system," and therefore, the Court has "long presumed that Congress does not cavalierly preempt state-law causes of action" and (2) the court could not find a "clear and manifest purpose of Congress," to preempt state common-law. *Id.* at 485. The Court clearly noted that allowing preemption in this and similar cases "would have the

perverse effect of granting complete immunity from design defect liability to an entire industry that, in the judgment of Congress, needed more stringent regulation…" *Id.* at 487.

This affirmative defense is barred and should be stricken.

### Fourth, Fifth, and Sixth Affirmative Defenses

The allegations in the affirmative defenses fail to allege the names of other non-parties who were negligent, fail to allege what they did wrong and/or fail to allege any of the elements necessary in order to establish a prima facie case of negligence as required by the Florida Supreme Court opinions of *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993) and *Nash v. Wells Fargo Guard Service, Inc.*, 678 So.2d 1262 (Fla. 1996) interpreting FSA§768.81.

The Florida Supreme Court's opinions in *Fabre v. Marin*, 623 So.2d 1182 (Fla. 1993) and *Nash v. Wells Fargo Guard Service, Inc.*, 678 So.2d 1262 (Fla. 1996) state that when a defendant seeks to assert that non-parties are liable for the plaintiff's injuries the defendant has the burden of alleging and proving who they are and how the non-parties were negligent and how those acts caused the plaintiff's injury. The defendant cannot give itself a "wild card" by reserving the right to name someone as a *Fabre* non-party in the future.

In the case of *Nash v. Wells Fargo Guard Service, Inc.*, 678 So.2d 1262 (Fla. 1996), the Florida Supreme Court stated:

*   *   *

> ***We agree and now hold that in order to include a nonparty on the verdict form pursuant to Fabre, the defendant must plead as an affirmative defense the negligence of the non-party and specifically identify the non-party.*** The defendant may move to amend pleadings to assert the negligence of a nonparty subject to the requirements of Florida Rule of Civil Procedure 1.190. However, notice prior to trial is necessary because the assertion that noneconomic damages should be apportioned against a nonparty may affect both the presentation of the case and the trial court's rulings on evidentiary issues.

9

In addition to the pleading requirement, the defendant has the burden [FN 1] of presenting at trial that the non-party's fault contributed to the accident in order to include the nonparty's name on the jury verdict.  *See W.R. Grace & Co.- - Conn. v. Dougherty*, 636 So.2d 746, 748 (Fla. 2d DCA) (without evidence of the nonparty defendant's negligence, the named defendant has "not established the foundation necessary for a jury to receive jury instructions and a verdict form to decide the case pursuant to section 768.81, Florida Statutes (1991) and *Fabre*"), *review denied*, 645 So.2d 457 (Fla. 1994). ***We further hold that the named defendant cannot rely on the vicarious liability of a nonparty to establish the nonparty's fault.*** 678 So.2d 1262 at p. 1264. *(Emphasis added)*

\*       \*       \*

The Third District Court of Appeal has ruled in the case of *Bogosian v. State Farm Mutual Auto Insurance Company*, 817 So.2d 968 (Fla. 3rd D., 2002), that a defendant who seeks to assert the negligence of a *Fabre* non-party as an affirmative defense cannot simply refer to a pleading filed by the plaintiff but has an independent obligation to identify the name of the third party and to properly plead the elements of negligence and causation of the non-party by stating:

\*       \*       \*

The pleadings must be perfected to give the plaintiff fair notice that the defendant intends to try to prove culpability on the part of a nonparty Fabre defendant, in this case D.O.T.  It is true that the plaintiff was thoroughly familiar with Mr. Bynum's opinions regarding D.O.T.'s negligence.  However the prejudice to plaintiff arises because, in the absence of a pleading creating fair notice, plaintiff had no opportunity to plan a defense or gather evidence and witnesses in opposition to State Farm's position. [FN3].

FN3.  In a nutshell, plaintiff would have introduced evidence to show that even with the alleged design and signage flaws, most motorists in the left-hand lane stay there and do not abruptly change lanes, striking other motorists.  Plaintiff's argument would be that the main responsibility for the accident was that of the phantom driver, not D.O.T. 817 So.2d 968 at p. 970-971.

10

*        *        *

The allegations of the fourth and fifth affirmative defenses fail to comply with the pleading requirements of the cited cases and should be stricken. The Defendant fails to specifically allege the negligence of Dr. Rush and Holy Cross Hospital and the defenses are not plead with the required specificity and factual context. Likewise, the Defendant's sixth affirmative defense, in addition to providing no specificity or factual context at all, fails to even name the individuals or entities that are asserted to have been negligent. Such a defense is improperly plead and should be stricken as well.

**Seventh Affirmative Defense**

The COOK stent was approved by the FDA only for use in the biliary tract only. COOK does not now, and has not ever obtained approval from the FDA for the use of the Formula 418 balloon expandable biliary stent in the renal artery or other peripheral vasculature. Therefore, defense counsel has no basis to argue a state of the art defense in the present context. Because the COOK stent was not approved for use in the renal artery, it does not follow that it can be said to comply with the state of the art with regard to renal stenting.

Accompanying the COOK Formula 418 balloon expandable biliary stent is the warning, "The safety and effectiveness of this device for use in the vascular system have not been established." It is clear that the COOK stent had not undergone the clinical testing and thorough analysis that would be required for a state of the art defense in the present context. The issue is not whether the COOK stent complied with the state of the art for biliary stents, but rather whether it complied with the state of the art for the purpose for which it was used, ie., renal artery stenting.

11

The evidence will also show that a safer, practical alternative design did exist and could reasonably have been marketed to the industry after necessary approvals. Therefore, "compliance with industry standards is not, and should not be, a complete defense to a products liability cause; it may indicate a failure on the part of an entire industry." *Frantz v. Brunswick Corp.*, 866 F.Supp. 527, 534(S.D. Ala. 1994).

### Tenth and Eleventh Affirmative Defenses

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) does not make an award of punitive damages impermissible in this case. While the United States Supreme Court outlined certain standards with regard to an award of punitive damages, an outright ban of such damages was not implemented as the Defendant would have this Court believe. Likewise, the Fourteenth and Fifth Amendments to the United States Constitution and the Constitution of the State of Florida do not impose a ban on an award of punitive damages in a case such as this. To the contrary, there is an abundance of case law allowing punitive damages in products liability cases. The assessment of punitive damages against a corporation does not violate that corporation's constitutional rights. *Pacific Mutual Life Insurance Company v. Haslip*, 499 U.S. 1 (1991).

## IV. CONCLUSION

For the foregoing reasons, the Court should strike Defendant's first, third, fourth, fifth, sixth, seventh, tenth, and eleventh affirmative defenses pursuant to FRCP 12(f).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was uploaded to the Court's CM/ECF System on December 10, 2013; and has been served by United States Mail, to: Douglas B. King, Esq., WOODEN & McLAUGHLIN LLP, 211 North Pennsylvania Street, One Indiana Square, Suite 1800, Indianapolis, IN 46204-4208, dking@woodmclaw.com and Anthony P. Strasius, Esq., Wilson Elser Koskowitz Edelman & Dicker LLP, 100 Southeast Second Street, Suite 3800, Miami, FL 33131-2126, anthony.strasius@wilsonelser.com

SCHLESINGER LAW OFFICES, P.A.
*Attorneys for Plaintiff*
1212 Southeast Third Avenue
Fort Lauderdale, Florida 33316
Tel:  (954) 320-9507
Fax:  (954) 320-9509

By:      s/*Charles B. Patrick*_____
Charles B. Patrick, Esq.
FBN: 157550
Email: cpatrick@schlesingerlawoffices.com